PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

IVANA DJAK (NYBN 5516687)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3918
    FAX: (510) 637-3724
    ivana.djak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JONSAN VALLE RODRIGUEZ,<br><br>    Defendant. | **CASE NO. 23-CR-501 JSC**<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Court:         Hon. Jacqueline Scott Corley<br>Hearing Date:  May 21, 2025<br>Hearing Time:  10:00 A.M. |

## I.    INTRODUCTION

The Defendant, Jonsan Valle Rodriguez, is a drug dealer who worked in the Tenderloin in San Francisco, California. On August 21, 2024, the Defendant pled guilty to Count Five (Possession with Intent to Distribute Fentanyl) of the Indictment. *See* Dkt. No. 12, Indictment; Dkt. No. 70, Plea Agreement ("Plea") ¶ 1; Dkt. No. 85 Presentence Report ("PSR") ¶ 7. Sentencing is set for May 21, 2025.

During the period from about August 9, 2023 to about December 12, 2023, the Defendant engaged in a drug trafficking conspiracy with others, including his co-defendants, to traffic fentanyl, methamphetamine, and other controlled substance in the Tenderloin District and in Oakland, California. PSR ¶ 7. On December 12, 2023, law enforcement executed a search warrant at the Defendant's residence in Oakland and found 395.8 net grams of fentanyl in the Defendant's room and backpack. PSR ¶ 10.

Agents also found a safe and another black backpack both containing large amounts of U.S. currency, totaling $106,826.00. In total, law enforcement found $127,832.00 throughout the apartment and vehicles that were searched. *Id.* Additional large quantities of drugs were found in vehicles parked outside the Defendant's Oakland residence and associated with the Defendant. *Id.* The Defendant's minor children lived with him at the residence where the drugs were found.

The Defendant's conduct is serious and warrants a term of incarceration. Based on the nature and circumstances of the offense, the Defendant's lack of criminal history, and the Defendant's acceptance of responsibility, the government submits that a custodial sentence of 26 months' imprisonment to be followed by three years of supervised release, is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

## II.     OFFENSE CONDUCT

During the period from on or about August 9, 2023 to on or about December 12, 2023, the Defendant engaged in a drug trafficking conspiracy with others, including his co-defendants, namely his cousin Emilson Valle Zuniga ("Valle Zuniga") and sister Maria Valle Rodriguez ("Maria"), his deceased brother Jose Valle Rodriguez (aka "Lolo"), and other unindicted co-conspirators, to traffic fentanyl, methamphetamine, and other controlled substance in the Tenderloin District and in Oakland, California. PSR ¶ 7; Plea ¶ 7.

The investigation initially centered on Maria and her participation in numerous undercover buys. Maria had three vehicles registered under her name that were used for drug trafficking. PSR ¶ 7. She drove one of these vehicles, a red 2011 Nissan Maxima, from Oakland, California to the Tenderloin during the nighttime hours to sell drugs. The other vehicles were driven by other unindicted co-conspirators and the co-defendants, including the Defendant, who drove a gray 2004 Nissan Murano. *Id.* The Defendant and his co-defendants drove into the Tenderloin and they dealt drugs together. One of the vehicles would usually transport the drug supply into the Tenderloin, at which point the co-conspirators would walk into the Tenderloin together and retrieve drugs from whoever was holding the supply for that night. *Id.* Additionally, the Defendant and his co-conspirators used a residence on Meadow Street in Oakland, California, for drug trafficking. Fentanyl was stored in the apartment, which was occupied by the Defendant, Maria, Valle Zuniga, and several minor children. *Id.* Maria kept a

ledger of drug transactions and supplier contact information in her bedroom at the residence, as well as in her cellphone. Maria contacted drug suppliers in Mexico as part of the conspiracy. *Id.*

The San Francisco Police Department ("SFPD") and Drug Enforcement Administration ("DEA") conducted multiple controlled drug purchases with Maria between August 9, 2023 and November 28, 2023. PSR ¶ 8. The first four transactions occurred in the San Francisco's Tenderloin District, and the fifth transaction occurred in Oakland. On August 9, 2023, an SFPD officer acting in an undercover capacity (UC-1) purchased 4.5 gross grams of fentanyl from Maria. *Id.* Maria again sold UC-1 fentanyl on August 17, 2023 (58.9 gross grams), and September 7, 2023 (58.6 gross grams). On November 7, 2023, Maria sold UC-1 fentanyl (51.8 gross grams) and methamphetamine (31.4 gross grams). *Id.* On November 28, 2023, Maria sold 85.4 gross grams of fentanyl to the UC-1. PSR ¶ 9.

On December 12, 2023, law enforcement executed a federal search warrant on the apartment where the Defendant resided with my family and minor children at Meadow Street in Oakland. PSR ¶ 10. Agents knocked and announced themselves, and the Defendant opened the door and allowed them to enter the premises. There were three other adults and four children at the premises at the time of the search. Plea at 3. After agents moved the occupants outside, the Defendant told agents that he drove a gray 2004 Nissan Murano, which was one of the vehicles authorized to be searched pursuant to the federal search warrant. He also told agents that he lived in a room in the apartment (labeled by the agents during the search as Room P). *Id.* Agents searched Room P and found a license plate matching the 2004 Nissan Murano hanging from the wall. Agents searched a closet in Room P, and discovered a black backpack shoved on top of a pile of clothing inside the closet. Agents searched the backpack and found a Republic of Honduras registration card containing the Defendant's name and date of birth. Agents also found 395.8 grams (including packaging) of fentanyl inside various ziplock bags and tupperware inside the backpack. PSR ¶ 10. Agents also found a safe and another black backpack both containing large amounts of US currency, totaling $106,826.00. In total, law enforcement found $127,832.00 throughout the apartment and vehicles that were searched. *Id.*

Inside Room P, underneath the license plate hanging on the wall, agents observed multiple sets of car keys hanging from a wall mount. Plea at 3. The Defendant pointed agents to two vehicles parked right outside the door of the residence at Meadow Street, in the building parking lot. *Id.* Neither vehicle

3
23-CR-501 JSC

was registered to the Defendant, but his Honduran passport was found in one of the vehicles. Agents searched these vehicles and located additional controlled substances and U.S. currency. *Id.* Agents searched a 2004 silver Mazda and a 2005 silver Infinity. Agents did not locate any contraband inside the Infiniti but located 900.9 net grams of methamphetamine and 1,578.4 net grams of fentanyl inside the Mazda. PSR ¶ 10.

That same night, agents also executed searches on vehicles utilized by Valle Zuniga and Maria. Agents contacted Valle Zuniga as he was driving in San Francisco and arrested him. PSR ¶ 11. Agents found 766.1 gross grams of fentanyl and 60.4 gross grams methamphetamine inside his vehicle. Valle Zuniga was transporting these drugs into the Tenderloin for him and Maria to deal together. That same night, agents contacted Maria as she was driving in San Francisco and arrested her. *Id.*

## III.   PROCEDURAL HISTORY

On December 14, 2023, the Defendant was charged by Complaint with Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Dkt. No. 1. He was Indicted on the same charge in a multi-count multi-defendant Indictment on December 21, 2023. Dkt. No. 12. There is also a forfeiture allegation pursuant to 21 U.S.C. § 853(a). After a series of detention hearings, the Defendant was ordered detained on January 18, 2024. *See* Dkt. Nos. 20, 27, 38, 46.

On August 21, 2024, the Defendant pled guilty to Count Five of the Indictment alleging Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Dkt. Nos. 69, 70. Sentencing is set for May 21, 2025 at 10:00 a.m.

## IV.   SENTENCING GUIDELINES CALCULATION

The parties agreed to a plea agreement resulting in an adjusted offense level of 21. The calculation is as follows: Possession with Intent to Distribute Fentanyl (Base Offense Level 28, pursuant to U.S.S.G. § 2D1.1(c)(6)). There is a two-level reduction because the Defendant qualifies for the Zero Offender Adjustment pursuant to U.S.S.G. §4C1.1. There is a three-level reduction for Acceptance of Responsibility, pursuant to U.S.S.G § 3E1.1. *See* Plea¶ 7; PSR ¶ 18 – 26. The parties also agreed to a two-level reduction for reaching a Global Resolution pursuant to U.S.S.G. 5K2.0(a)(2)(B). This results in an adjusted offense level of 21. *See* Plea¶ 7.

The Defendant has no prior convictions, and his criminal history score is zero. PSR ¶ 30. Based

on a total offense level of 21 and a CHC of I, the guideline range is 37 to 46 months.

Probation does not yet include the two-level reduction for Global Resolution in its calculation and accordingly concludes that the adjusted offense level is 23. PSR ¶ 27. Based on a total offense level of 23 and a CHC of I, Probation concludes that the guideline range is 46 to 57 months. *Id*. ¶ 59

Pursuant to the plea agreement, and as detailed below, the government agreed to recommend a sentence no higher than that associated with a 30-percent downward variance from the bottom of the guidelines range. Plea ¶ 16. That results in a 26-month term of incarceration, which represents an 11-month downward variance.

## V. APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence to protect the public from future crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

## VI.     RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 26 months to be followed by a three-year term of supervised release, commensurate with an Adjusted Offense Level of 21, a CHC I, and an agreed-upon 11-month downward variance from the low end of the guideline range.

The nature and circumstances of the Defendant's offense are serious.  The Defendant was a professional drug trafficker and a member of a sophisticated drug trafficking organization operating in the Tenderloin District in San Francisco.  On December 12, 2023, the Defendant was arrested at his residence where agents found 395.8 net grams of fentanyl in his bedroom closet, unsecured, in a home where children resided.  Agents also found large quantities of drugs in a vehicle connected to the Defendant.  In total, law enforcement personnel recovered approximately eight gross pounds of fentanyl and fentanyl analogue and two gross pounds of methamphetamine, as well $127,000 in cash, at the premises and in the vehicles connected to the drug trafficking organization of which Defendant was a member.

However, it is also clear that Maria was a leader and organizer and exercised managerial control over the Defendant, and that the Defendant played a supporting role in the operation.  PSR ¶¶ 7–12.  The Defendant has no prior criminal convictions.  He has no history of arrests as an adult, although he was arrested on a drug offense and for illegal entry as a minor.  PSR ¶¶ 28–34.  The government also notes that the Defendant has expressed remorse for his conduct and appears to have been driven to the conduct out of desperation and poverty, and at the behest and influence of his two older siblings, Maria and Lolo. *See P*SR ¶ 16.

The Defendant saved the government substantial resources by accepting responsibility and entering a global resolution with his co-defendants.  The government is hopeful that the Defendant's acceptable of responsibility and show of remorse signal that he will rejoin society in a more productive manner after this term of incarceration and rebuild a life for himself and his children.

The governments' recommendation of a custodial sentence of 26 months imprisonment takes all the above aggravating and mitigating factors into account.  A lengthy sentence is necessary to protect the public from an individual who has engaged in serious and dangerous criminal conduct.  The recommended

sentence also reflects that the Defendant does not have any prior criminal convictions and has accepted responsibility for his conduct.

A 26-month sentence followed by three years of supervised release is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

DATED: May 14, 2024

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

/S/
_____

Ivana Djak
Assistant United States Attorney

23-CR-501 JSC

7